**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 25-1085**

DMARCIAN, INC.,

        Plaintiff - Appellee,

v.

PRESSLY MCAULEY MILLEN,

        Party-in-Interest - Appellant,

and

DMARC ADVISOR BV, f/k/a Dmarcian Europe BV,

        Defendant.

Appeal from the United States District Court for the Western District of North Carolina, at Asheville.  Martin K. Reidinger, Chief District Judge.  (1:21-cv-00067-MR)

Argued:  May 7, 2026                    Decided:  July 10, 2026

Before WILKINSON, and WYNN, Circuit Judges, and KEENAN, Senior Circuit Judge.

Vacated as to Millen by published opinion.  Judge Keenan wrote the opinion, in which Judge Wilkinson and Judge Wynn joined.

**ARGUED:**  Samuel B. Hartzell, WOMBLE BOND DICKINSON (US) LLP, Raleigh, North Carolina, for Appellant.  David Anthony Dorey, BLANK ROME LLP, Wilmington, Delaware, for Appellee.  **ON BRIEF:**  David N. Allen, Benjamin S. Chesson, Anna C.

Majestro, ALLEN, CHESSON & GRIMES PLLC, Charlotte, North Carolina, for Appellant.  Pamela S. Duffy, Tyler C. Jameson, ELLIS & WINTERS, LLP, Greensboro, North Carolina, for Appellee.

———————

BARBARA MILANO KEENAN, Senior Circuit Judge:

In this appeal, an attorney challenges a district court order holding him in civil contempt, which occurred during an ongoing civil action in which the attorney's client is a defendant. As an initial matter, we conclude that we have jurisdiction over the attorney's appeal from the contempt order. Although no final judgment has been entered in the underlying action, the attorney is not a party to that action and so can immediately appeal the contempt judgment. On the merits, we conclude that the district court abused its discretion in finding the attorney in civil contempt when the moving party failed to produce evidence that it had been harmed by the attorney's alleged noncompliance with a prior court order. On this narrow ground, we vacate the attorney's contempt adjudication.[1]

I.

In March 2021, dmarcian, Inc. (dInc), a North Carolina based software company, filed suit in the Western District of North Carolina (the North Carolina court or the district court), against its former business partner, DMARC Advisor BV (dBV), a Dutch entity based in the Netherlands (the North Carolina case). dInc asserted claims for (1) copyright and trademark infringement, (2) misappropriation of trade secrets, and (3) numerous state

---

[1] In an opinion also released today, *dmarcian, Inc. v. DMARC Advisor BV*, No. 23-1790(L), --- F.4th --- (4th Cir. 2026) (*dmarcian II*), we affirmed the district court's second amended preliminary injunction entered against dBV. We also held that we lack jurisdiction over dBV's interlocutory appeal challenging the district court's "correction order," described below, and the court's civil contempt order imposing $400,000 in sanctions against dBV.

law violations, all arising from "a broken business relationship" between dInc and dBV. *dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119 (4th Cir. 2023) (*dmarcian I*).

After filing its complaint, dInc also requested a temporary restraining order and a preliminary injunction against dBV. In May 2021, the district court issued a preliminary injunction.[2] The court enjoined dBV from (a) providing services or access to its websites to any customers located outside of Europe, Africa, or Russia, (b) using dInc's trademark or name without a disclaimer, (c) redirecting customers from dInc to dBV, and (d) making any public statement about dInc.

In June 2021, dInc amended its complaint. Several months later, in October 2021, dBV initiated a lawsuit alleging related claims against dInc in a court in Rotterdam, Netherlands (the Dutch court). In response, dInc requested a stay in the Dutch court to permit the North Carolina case to proceed first.

In the Dutch court, dBV opposed the stay, submitting a supporting affidavit from one if its North Carolina attorneys, Pressly Millen. In his affidavit, Millen suggested that the nature of the Dutch proceedings and the North Carolina case were distinct and, so, the cases could proceed simultaneously. In addition, one of dBV's Dutch attorneys, Alfred Meijboom, urged the Dutch court to deny a stay on the ground that the Dutch case had begun prior to the "merits" proceedings in the North Carolina case. Although the complaint in the North Carolina case was filed several months before the Dutch case was filed,

---

[2] This Court affirmed the May 2021 preliminary injunction order in 2023. *See dmarcian I*, 60 F.4th 119.

4

Meijboom contended that under Dutch law, the "merits" proceedings in the North Carolina case began on May 22, 2022, when the North Carolina court permitted the parties to engage in discovery. The Dutch court agreed with dBV's position. In late 2022, the Dutch court denied dInc's request to stay the Dutch proceedings and set the case for trial on July 5, 2023.

Meanwhile, in the North Carolina court, dInc sought to enjoin dBV from proceeding in the Dutch court while the North Carolina case was being litigated. dInc also requested that the district court require dBV to correct purported "misrepresentations" made to the Dutch court regarding the subject matter and timing of the North Carolina case. The district court declined to enjoin dBV from continuing to litigate the Dutch case while the North Carolina case was pending. *See dmarcian, Inc. v. DMARC Advisor BV*, No. 1:21-cv-67, 2023 WL 4223536, at *7 (W.D.N.C. June 27, 2023). But the district court agreed that dBV had made "significant and material misrepresentations" to the Dutch court causing "a risk of inconsistent, conflicting, and erroneous judgments." *Id.* at *9. The district court entered an order on June 27, 2023, requiring dBV "to promptly correct its misstatements" (the correction order). *Id.*

In the correction order, the district court instructed dBV to submit to the Dutch court (1) a copy of the correction order and (2) a statement from dBV's counsel correcting false and misleading representations (the separate statement). *Id.* The court listed in the correction order the specific information that dBV's counsel should include in the separate statement: (1) that the merits of the North Carolina case began in March 2021 when dInc filed its initial complaint, and that any contrary representation was "entirely untrue"; (2)

5

that there was "some overlap" between the North Carolina case and the Dutch proceedings, and that any contrary representation that the North Carolina case involved only violations of U.S. copyright and trademark law was "entirely untrue;" and (3) that the preliminary injunction issued by the district court against dBV applied extraterritorially and that any contrary representation was "entirely untrue."[3] *Id.*

After the district court entered the correction order, Millen and his American co-counsel, Sam Hartzell,[4] met with Meijboom and representatives from dBV. ██████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

On July 3, 2023, Meijboom submitted a copy of the correction order to the Dutch court but did not submit the separate statement. On July 5, 2023, Meijboom appeared before the Dutch court and, contrary to the district court's correction order, reaffirmed his contention that (1) the Dutch action preceded the merits portion of the North Carolina case, and (2) the claims in each case are distinct.

---

[3] As explained in our companion decision, the district court's statement that the injunction applied extraterritorially was made before the Supreme Court's decision in *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412 (2023). *See dmarcian II*, --- F.4th at ---.

[4] Hartzell is one of the attorneys representing Millen in the present appeal.

████████████████████████████████████████

████████████████████████████████████████

██████████████ dBV and its Dutch counsel declined to do so.

In September 2023, dInc filed in the district court a motion for a show cause order why dBV and Meijboom should not be held in contempt for failing to submit the separate statement required by the correction order. Before the district court decided the matter, the Dutch court reversed its prior ruling and, in December 2023, stayed the Dutch case. The Dutch court agreed with the district court's conclusions in the correction order and held that the North Carolina case began before the Dutch case and that the cases involved overlapping issues.

On May 1, 2024, the district court entered an order to show cause against dBV and ordered Millen, Hartzell, and Meijboom to appear personally in the district court. In August 2024, the district court held a show cause hearing. Meijboom argued, among other things, that dBV's counsel was prohibited by Dutch law from filing the separate statement. Hartzell and Millen made numerous arguments, including that they had substantially complied with the correction order and that dInc was not harmed by the failure to file the separate statement. ████████████████████████

████████████████████████████████████████

████████████████████████████████████

On December 20, 2024, the district court held dBV and Millen in civil contempt for failing to file the separate statement as required by the correction order (the contempt order). *See dmarcian, Inc. v. DMARC Advisor BV*, No. 1:21-cv-67, 2024 WL 5193519, at

7

*11 (W.D.N.C. Dec. 20, 2024).[5] The court concluded that because of dBV's misrepresentations to the Dutch court, dInc had incurred substantial expense and proceedings in both courts had been delayed. *Id.* at *10. The district court imposed monetary sanctions of $400,000 on dBV, which sum represented "the attorney's fees and expenses incurred by [dInc] as a result of [dBV's] contemptuous conduct." *Id.* at *11.

The district court did not hold Millen jointly liable for the monetary sanction imposed on dBV. The court noted that "Millen's improper actions constitute[d] one small slice of the overall obstruction." *Id.* Nonetheless, the court imposed against Millen a separate sanction, the temporary suspension of his admission to the Bar of the Western District of North Carolina. *Id.* This sanction prevents Millen from representing clients or submitting filings in any federal court in that jurisdiction. The district court held that Millen's sanction would conclude upon the completion of the North Carolina case, or, earlier, by Millen submitting a new affidavit to the Dutch court "correcting the misstatements and omissions" and apologizing to the Dutch court. *Id.*

---

[5] The district court found that Meijboom's actions were contemptuous because he failed to comply with the correction order in his capacity as dBV's counsel and directly contravened that order when arguing to the Dutch court on July 5, 2023. *Id.* at *8–9. The court stated that these actions were done with dBV's knowledge and, thus, Meijboom's conduct supported the contempt finding against dBV. *Id.* at *9. The district court did not hold Meijboom personally in contempt. The court also did not hold Hartzell in contempt, because, unlike Millen, Hartzell had not previously made any representations to the Dutch court, and Hartzell "undertook a number of communications seeking to prod Mr. Meijboom into full [c]ompliance" with the correction order. *Id*. at *10.

Millen filed the present appeal, challenging the contempt order. In response, dInc filed a motion to dismiss Millen's appeal as interlocutory and alternatively submits that we should affirm the contempt order entered against Millen.

## II.

We begin by addressing whether we have jurisdiction over Millen's appeal. dInc argues that the contempt order is interlocutory, and that Millen is required to wait until the district court enters a final judgment in the North Carolina case before appealing the contempt order entered against him. Relying on *In re Bestwall, LLC*, 99 F.4th 679 (4th Cir. 2024), dInc submits that because the district court issued contempt sanctions against both dBV and Millen, their interests are congruent and preclude Millen from lodging an immediate appeal. We disagree with dInc and conclude that we have jurisdiction over Millen's appeal.

Under 28 U.S.C. § 1291, federal courts of appeal have jurisdiction over final decisions from district courts. Final orders are those in which "nothing remains for the district court to do except execute the judgment." *United States ex rel. Lutz v. United States*, 853 F.3d 131, 136 (4th Cir. 2017). Because civil contempt orders do not resolve the entire litigation, they are generally interlocutory and are not immediately appealable. *Bestwall*, 99 F.4th at 684. Instead, parties challenging a contempt order ordinarily must wait for a final judgment. *See id.*; *United States v. Myers*, 593 F.3d 338, 344 (4th Cir. 2010).

9

In contrast, nonparties held in civil contempt need not await a final judgment in an underlying case to appeal their contempt adjudication. *See United States Cath. Conf. v. Abortion Rts. Mobilization, Inc.*, 487 U.S. 72, 76 (1988). Because a civil contempt order typically constitutes a final adjudication of the nonparty's rights, such an order entered against a nonparty is treated as a final, appealable decision. *See In re Under Seal*, 749 F.3d 276, 284 (4th Cir. 2014) (citing *Myers*, 593 F.3d at 344 n.9). Applying that well-established rule here, we conclude that we have jurisdiction over Millen's immediate appeal of the contempt order because Millen is not a party to the North Carolina case. *See United States v. Accetturo*, 842 F.2d 1408, 1412 (3d Cir. 1988) (holding that civil contempt orders intending to coerce nonparty attorneys into complying with court orders are immediately appealable); *United States v. Dowell*, 257 F.3d 694, 698–99 (7th Cir. 2001) (same).

Our decision in *Bestwall* does not alter this conclusion. In that case, a debtor sought to enforce a bankruptcy court order requiring claimants to complete questionnaires addressing their personal injury claims subject to inclusion in a Chapter 11 reorganization plan. *Bestwall*, 99 F.4th at 683. When the claimants refused to comply, the bankruptcy court imposed monetary sanctions for contempt of court, holding both the claimants and their counsel jointly and severally liable. *Id.* at 684. We held that the contempt order was interlocutory in nature and, therefore, was not immediately appealable because it did not end a "procedural unit separate from the remaining [bankruptcy] case" or follow a ruling that terminated such a unit. *Id.* at 685 (alteration in original). Moreover, we noted that while contempt sanctions entered solely against a nonparty are immediately appealable,

10

that circumstance was not presented in the case before us. *Id.* at 684 n.1; *see Algeran, Inc. v. Advance Ross Corp.*, 759 F.2d 1421, 1425 (9th Cir. 1985) (noting that joint sanctions create such a "congruence of interest" that counsel "must await final judgment" to appeal).

Here, however, the district court did not hold Millen jointly and severally liable for the monetary sanctions imposed against dBV. Instead, the court imposed on Millen a distinct sanction temporarily prohibiting him from practicing law in federal courts in the Western District of North Carolina. Millen's sanction was totally separate from the monetary sanction imposed against dBV. And, as we observed in our companion opinion released today, if dBV had paid a monetary sanction that was improperly imposed, that sum could "be refunded appropriately after a final judgment." *dmarcian II*, --- F.4th at ---. In contrast, if Millen's sanction was improperly imposed, his potential economic and reputational costs associated with the prohibition from practicing law could not be simply "refunded" after final judgment. So, we hold that because Millen's contempt sanction finally resolved the only issue relating to him, a nonparty appellant, we have jurisdiction to consider Millen's appeal under Section 1291. Accordingly, we deny dInc's motion to dismiss the appeal.[6]

---

[6] We reject as meritless dInc's additional argument that the contempt order is not "final" as to Millen because it constitutes an order disqualifying counsel from a pending case. As explained above, the district court's civil sanction against Millen goes beyond preventing him from representing dBV. It temporarily bars Millen from practicing law in the Western District of North Carolina in any case.

11

III.

We turn to consider the merits of Millen's appeal challenging the contempt order. We review such orders under an abuse-of-discretion standard. *Consumer Fin. Prot. Bureau v. Klopp*, 957 F.3d 454, 461 (4th Cir. 2020). In that context, we review factual findings for clear error and legal questions de novo. *Id.*

Millen makes several arguments addressing the merits of his appeal. For purposes of our analysis, we focus on Millen's assertion that the district court abused its discretion in holding him in civil contempt because the evidence did not show that his alleged noncompliance with the correction order caused harm to dInc.

dInc responds to Millen's assertion, stating that it was harmed by Millen's failure to submit the separate statement ordered by the district court. According to dInc, after dBV submitted a copy of the correction order to the Dutch court on July 3, 2023, Meijboom continued to oppose a stay in that court and to advance his contrary position about the timing and nature of the North Carolina proceedings. dInc maintains that if Millen had filed the separate statement, Meijboom would have been precluded from continuing to assert these erroneous arguments that delayed the Dutch court's imposition of a stay. dInc also generally contends that Millen's failure to file the separate statement delayed the trial in the North Carolina case and caused dInc additional legal expenses in seeking a stay in the Dutch court. We disagree with dInc's position and conclude that the district court abused its discretion in imposing the sanction on Millen.

Initially, we observe that although the Dutch court originally denied dInc's request for a stay based in part on Millen's and Meijboom's purported misrepresentations, that

12

conduct preceded the correction order and thus is not relevant to our inquiry of alleged harm resulting from Millen's failure to submit the separate statement. Instead, dInc was required to show that it suffered harm *after* the date of the correction order of June 27, 2023, by Millen's failure to file the separate statement.

To establish civil contempt, dInc bore the burden to show by clear and convincing evidence that: (1) a valid order existed and Millen had knowledge of the order; (2) the order favored dInc; (3) Millen knowingly violated the order; and (4) Millen's violation of the order caused dInc harm. *See Rainbow Sch., Inc. v. Rainbow Early Edu. Hldgs.*, 887 F.3d 610, 617 (4th Cir. 2018) (citing *United States v. Ali*, 874 F.3d 825, 831 (4th Cir. 2017)). Before a court may impose sanctions for civil contempt, each of these four elements must be satisfied. As explained above, we focus here on the fourth element, the requirement of harm.

This requirement in a civil contempt inquiry, that a movant must show it was harmed by the conduct at issue, underscores the basic principle that civil contempt is remedial in nature. *In re Gen. Motors Corp.*, 61 F.3d 256, 259 (4th Cir. 1995); *see Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827–28 (1994). The court's power of civil contempt must be focused on correcting a deficiency rather than on punishing the contemnor. *Gen. Motors*, 61 F.3d at 259; *see Bagwell*, 512 U.S. at 827–28. Civil contempt sanctions thus are limited to two purposes: (1) to coerce a party to comply with a court order, or (2) to compensate a complainant for its losses incurred by the contemnor's conduct. *Cromer v. Kraft Foods N. Am. Inc.*, 390 F.3d 812, 821–22 (4th Cir. 2004) (citing *Gen. Motors*, 61 F.3d at 258).

13

In the present case, the sanction imposed on Millen did not promote compliance with a court order or ensure that dInc be compensated for any harm it sustained as a result of Millen's failure to comply with the correction order. Instead, the extreme sanction imposed by the district court, barring Millen from practicing law in federal courts in the Western District of North Carolina while the case remained pending, was overtly punitive and was not remedial in any respect.

Before exercising its discretion to impose civil contempt sanctions, a court must consider the potential harm from continued noncompliance, the efficacy of the sanction, and the burden on the contemnor. *United States v. United Mine Workers of Am.*, 330 U.S. 258, 304 (1947). Here, the district court did not conduct such an analysis or require supporting evidence but summarily concluded that Millen's failure to file the separate statement caused dInc to incur expense related to delays in both the North Carolina case and the Dutch case. Although the court found that Meijboom's contradictory arguments in the Dutch court made it "crucial" that Millen file the separate statement, this finding did not demonstrate a particular loss to dInc arising from Millen's failure to do so. *See dmarcian, Inc.*, No. 1:21-cv-67, 2024 WL 5193519, at *9.

Moreover, the correction order filed with the Dutch court itself contained (1) the district court's view of the timing and the nature of the cases, and (2) the particular information that the court asked dBV's counsel to submit in the separate statement. After reviewing the correction order, the Dutch court ultimately agreed with the North Carolina court's view that the North Carolina case began before the Dutch case and that the two

14

cases had overlapping issues. As a result, and despite Meijboom's contrary arguments, the Dutch court stayed the Dutch case in December 2023.

Notably, dInc did not present any evidence, nor did the district court find, that Millen's submission of the separate statement would have resulted in a more favorable or timelier outcome in the Dutch court. Instead, dInc merely speculated that if Millen had filed the separate statement, Meijboom would have changed his position. And, contrary to this speculation, the record shows that Meijboom remained steadfast in his position throughout these proceedings, including during the contempt hearing, that he disagreed with the district court's conclusions in the correction order. Thus, the record does not support a conclusion that if Millen had filed the separate statement, dBV and Meijboom would have agreed to stay the Dutch proceedings.

Finally, we observe that the sanction imposed on Millen was severe in its potential economic and reputational costs, particularly given the district court's characterization of Millen's "improper actions" as being "one small slice" of dBV's contemptuous conduct. *See dmarcian, Inc.*, No. 1:21-cv-67, 2024 WL 5193519, at *11. The district court did not explain its rationale for temporarily barring Millen from practicing law in the Western District of North Carolina, or why this specific sanction was necessary to ensure compliance with the correction order. Thus, despite the district court's statement that the sanction was not punitive, the sanction effectively penalized Millen's past conduct rather than addressed future compliance with the correction order. *See Cromer*, 390 F.3d at 821 (explaining that an appeals court must determine the nature of a contempt sanction regardless of the label applied (citing *Buffington v. Baltimore County*, 913 F.2d 113, 133

15

(4th Cir. 1990))); *see also United Mine Workers of Am.*, 330 U.S. at 304. So, in the absence of clear and convincing evidence of harm to dInc from Millen's alleged violation of the correction order, the court's coercive sanction lacked any justification.

Although we find that the district court abused its discretion in imposing the contempt sanction on Millen, we nonetheless emphasize that trial courts have the inherent authority to enforce their lawful orders through civil contempt, particularly in contentious litigation. Courts must be able to exercise their supervisory authority over the progress of litigation and to take corrective action when required by the individual circumstances of a case. But here, the actions of the district court fell outside the proper scope of the court's contempt authority. Accordingly, we vacate the district court's civil contempt adjudication against Millen.

## IV.

For these reasons, we deny dInc's motion to dismiss the appeal for lack of jurisdiction, and we vacate the district court's order holding Millen in civil contempt and the court's imposition of a contempt sanction.

*VACATED*
*AS TO MILLEN*

16